# IN THE UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | Case No. 19-43088-399 |
| JEROLD LOUIS KAUSCH, SR. | ) | |
| | ) | |
| | ) | Chapter 7 |
| Defendant. | ) | |

| | | |
|---|---|---|
| | ) | |
| | ) | Barry S. Schermer |
| DANIEL J. CASAMATTA, | ) | United States Bankruptcy Judge |
| Acting United States Trustee, | ) | |
| | ) | Adversary No. _____ |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JEROLD LOUIS KAUSCH, SR. | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT OBJECTING TO DISCHARGE

Plaintiff, Daniel J. Casamatta, Acting United States Trustee for the Eastern District of Missouri ("Plaintiff" or "United States Trustee"), brings this Complaint against Defendant Jerold Louis Kausch, Sr. ("Defendant"), objecting to his discharge. In support of this Complaint, Plaintiff alleges the following:

### Jurisdiction and Venue

1.  This is an adversary proceeding in which the Plaintiff is seeking the denial of the Defendant's discharge. The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b) and 11 U.S.C. § 727.

2.  This adversary proceeding is procedurally and constitutionally core under 11 U.S.C. § 157(b)(2)(J).

1

3. To the extent that the Defendant denies that this proceeding is procedurally or constitutionally core, or if the Court so finds, the United States Trustee consents to the Bankruptcy Court's entry of final orders and judgment in accordance with Local Rule 7001-7.

4. Venue in this Court is proper pursuant to 28 U.S.C. § 1409(a).

5. This complaint is timely under Rule 4004(a) and (b) of the Federal Rules of Bankruptcy Procedure.

**Parties and Procedural History**

6. Plaintiff, Daniel J. Casamatta, was appointed under 28 U.S.C. § 581(a)(13) to be the Acting United States Trustee for Region 13, which includes the Eastern District of Missouri.

7. Plaintiff has standing to seek the denial of the Defendant's discharge in this case. 11 U.S.C. §§ 307 and 727.

8. The Defendant, Jerold Louis Kausch, Sr., filed a voluntary petition under chapter 7 of the Bankruptcy Code in this Court on May 15, 2019. The Defendant's bankruptcy case remains pending as case number 19-43088 ("the Bankruptcy Case").

9. Kristin Conwell is the duly appointed and acting chapter 7 trustee in the Bankruptcy Case ("the Trustee").

10. On June 14, 2019, the Defendant appeared for his original meeting of creditors scheduled pursuant to 11 U.S.C. § 341 (the "341 meeting") and was placed under oath and examined. The meeting was continued to July 11, 2019, August 2, 2019, and September 20, 2019, and the meeting was finally concluded on September 20, 2019.

11. The Defendant's discharge has not been entered in this case. The deadline for the Plaintiff and the Trustee to object to the entry of the Defendant's discharge has been extended three (3) times with the most recent extension to March 30, 2020. *See* Docket Nos. 15, 20, and 24.

2

12.    On February 5, 2020, the United States Trustee filed with this Court a Motion for Authorization to Conduct 2004 Examination (the "Motion"), requesting the Court to enter an Order requiring the Defendant to appear to be examined. *See* Docket No. 32.

13.    On February 6, 2020, the Court entered an Order (the "Order") granting the Trustee's Motion and ordering the Defendant to appear for examination.

## Facts

### Voluntary Petition

14.    On the petition that the Defendant filed in this bankruptcy case, he stated that his debts were primarily consumer debts. Defendant amended his voluntary petition on June 5, 2019, to state that his debts were primarily non-consumer debts.[1]

### Schedules A/B

15.    Along with his voluntary petition, the Defendant filed schedules and a statement of financial affairs on May 15, 2019 (the "original schedules" and the "original statement of financial affairs").

16.    In response to question 17 of his original Schedule A/B, which asked about deposits of money, the Defendant reported that he had $100.00 in a checking account at Midwest Bank and $100.00 in a checking account at BMO Harris Bank. He did not list any other accounts in response to question 17.

17.    On his original Schedule A/B, the Defendant answered "no" to question 18, which asked whether he had an interest in any bonds, mutual funds, or publicly traded stocks. After questioning by the trustee and representatives of the plaintiff during the original 341 meeting,

---

[1] Docket No. 8.

Defendant amended his schedules A/B to report a stock interest in Pfizer Inc. with a current value of $3,805.52 and stock in Prudential Financial valued at $1,305.07.

18. The Defendant answered "no" to question 22 of his original Schedule A/B, which asked whether he had any security deposits and prepayments.

19. The Defendant answered "no" to question 25 of his original Schedule A/B, which asked whether he had an interest in any trust.

20. In response to question 31 of the Defendant's original Schedule A/B, he reported an interest in two (2) Mass Mutual Life Insurance Policies with value "unknown" and a Symetra Life Insurance Policy with a value "unknown."

21. The Defendant answered "no" to question 35 of his original Schedule A/B, which asked whether he had any assets not already listed.

## Schedules E/F

22. The Defendant's original Schedules E/F[2] did not identify any debts as non-consumer/business debts. The Defendant's amended Schedule E/F was filed on June 5, 2019 identifying several debts as primarily business debt.

23. Among the debts the Defendant identified as primarily business debts on his amended Schedule E/F was a debt to Citicard CBNA with a total claim of $23,171 and described as Credit Card (Business).[3]

## Schedules I/J

24. The Defendant's original Schedules I, Line 8g, Pension or Retirement Income, states the Defendant's income as $2,709.76 and $942.76 for the Defendant's non-filing spouse.

---

[2] Docket No. 1.
[3] Docket No. 9, Amended Schedule E/F, page 5 of 8, no. 4.3.

25. Schedule I, Line 13 list other income as: "Defendant's son gifts Defendant $40,000 per year." On June 5, 2019, after representatives of the United States Trustee questioned the Defendant at the original 341 meeting about the $40,000 figure on Schedule I, the Defendant filed an amended Schedule I that stated, Defendant's non filing spouse receives $2,400 per month income from their son, less estimated taxes.

26. The Defendant's Schedule J, Line 4 lists a monthly rental expense of $2,583.33.

27. Schedule J, Line 13 lists an entertainment expense of $1,500.00 per month. The Defendant testified at his Rule 2004 exam that this is the amount his wife spends on gambling each month.

## Statement of Financial Affairs

28. Defendant did not list any income from employment or from operating a business during the previous two years on question 4 of the statement of financial affairs.

29. On the Defendant's second amended[4] statement of financial affairs, in response to Question 5, which directed the Defendant to list other income received during this year or the two previous calendar years, the Defendant listed sources of income as, pension for the year of 2019; pension, stock dividend and 1099 income for the year of 2018 and pension offset by business losses for the year of 2017;

30. Defendant's non-filing spouse's income received during this year and the prior two year is listed as, pension for the year of 2019; pension, gambling winnings and 1099 income for the year of 2018; and as pension and gambling winnings offset by business for the year of 2017.

31. The second amended[5] statement of financial affairs, in response to question 6, list payments made before the bankruptcy was filed and states: Landlord, $2,583.33 monthly, rent;

---

[4] See Docket 13 filed July 7, 2019.
[5] Id.

5

Complete Accounting Solutions, one payment of $4,500.00 on 05/08/2019 and $5,000.00 to STL Brokerage Services, LLC.[6]

32. The Defendant answered "no" to question 18 of his original statement of financial affairs, which asked him whether he had sold, traded, or otherwise transferred any property other than in the ordinary course of his business or financial affairs during the two years before he filed for bankruptcy.

33. The Defendant answered "no" to question 20 of his original statement of financial affairs, which asked him whether during the year before he filed for bankruptcy if any financial accounts or instruments in his names or for his benefit, were closed, sold, moved or transferred.

34. The Defendant answered "no" to question 23 of his original statement of financial affairs, which asked him whether he held or controlled property that someone else owns.

35. On the second amended[7] statement of financial affairs, in response to question 27, which asked about the Defendant's business or connection to any business, he listed Custom Service International at 9530 Watson Industrial Park, St. Louis, Mo 63126 and stated that it had closed 12/31/2017; Prairie State Terminals located at 9530 Watson Industrial Park, St. Louis, Mo 63126 and stated that it had closed 12/31/2017; and Thatcher Holding DBA and stated that it had closed in 1987.

36. The Defendant signed his original and later amended bankruptcy petition, schedules and statement of financial affairs under penalty of perjury, thereby attesting to the truthfulness of the information he provided in those documents.

---

[6] See Docket No.13; Complete Accounting and STL Brokerage were not listed on the Defendant's original or first amended Statement of Financial Affairs. Amendment came after representatives of the United States Trustee and the Trustee questioned the Defendant about his bank statements during the original 341 meeting.
[7] Id.

6

37. The Defendant, represented by his bankruptcy attorney, William Catlett, appeared at the 341 meeting.

38. At the beginning of the 341 meeting, the Trustee administered an oath to the Defendant, who swore to tell the truth in his 341-meeting testimony. After placing the Defendant under oath, the Trustee asked him a number of questions.

39. Defendant testified at the 341 meeting that he was personally familiar with the information contained on the Defendant's bankruptcy schedules and statement of financial affairs.

40. Defendant likewise testified at the 341 meeting that he was personally familiar with the information contained on his bankruptcy schedules and statement of financial affairs.

41. When the Trustee asked the Defendant whether the information on his bankruptcy schedules and statement of financial affairs was true and correct, the Defendant testified that it was. The Defendant further testified there were no errors or omissions on his bankruptcy papers that he needed to bring to the Trustee's attention.

42. The Trustee asked the Defendant whether he had listed all of his assets on his bankruptcy schedules, the Defendant replied that he had.

43. After the original 341 meeting, Defendant turned over certain financial information and authorized the Plaintiff to obtain certain financial records directly from certain financial institution as Defendant no longer had some of the information requested in his possession.

44. February 6, 2020, Plaintiff served the Defendant with a subpoena for documents and oral testimony pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure ("the Rule 2004 subpoena").

45. On February 27, 2020, counsel for the Plaintiff examined the Defendant under oath pursuant to the Rule 2004 subpoena.

46. The documents produced by the Defendant and certain financial institutions and the testimony he provided pursuant to the Rule 2004 subpoena revealed among other things:

   a. A number of false statements in the Defendant's original and amended schedules and statement of financial affairs;

   b. Preference transfers to insider(s) not originally disclosed;

   c. Concealment of property of others that the Defendant controlled, as Defendant failed to disclose that he was signatory on his son's STL Brokerage Services, LLC (hereinafter "STL Brokerage") business account(s); From STL Brokerage's Midwest Bank, account no. 506, Defendant wrote checks totaling approximately $650,000.00 to himself, his son(s), and other STL Brokerage bank account(s) within the year of filing; and,

   d. A failure to maintain financial documents;

### COUNT I – DENIAL OF DISCHARGE UNDER SECTION 727(a)(4)

47. Plaintiff realleges and incorporates the allegations of Paragraphs 1 through 46 as though fully set forth in this count.

48. Section 727(a)(4) of the Bankruptcy Code provides that the court shall grant a Defendant a discharge unless the Defendant knowingly and fraudulently makes a false oath or account in or in connection with the case in one or more of the following respects:

49. Contrary to the Defendant's statement in response to questions 17 and 23 of his original and amended Schedule A/B, Defendant in fact has an interest or control over bank account(s) other than the Midwest and BMO Harris accounts he listed. He testified during his Rule 2004 exam that he is an authorized signatory on his son's business account(s). Defendant used STL Brokerage's Midwest Bank, account no. 506, to write over $650,000 in checks to himself, his son(s), other STL Brokerage bank account(s) for which he also has access.

8

50. Although Defendant answered "no" to question 18 of his Schedules A/B, which asked whether he had an interest in any Bonds, mutual funds, or publicly traded stocks, after the Trustee and United States Trustee's representatives questioned him regarding taxes at his original 341 meeting, Defendant later amended his Schedules A/B[8] to report stock interest in Pfizer Inc. with a current value of $3,805.52 and stock in Prudential Financial valued at $1,305.07.

51. Contrary to Defendant's answer to question 22 of his Schedule A/B that he had no security deposits, at the time of filing he had a $2,550.00 placed with his landlord.

52. Although the Defendant stated on question 25 of his original Schedule A/B, that he had no trust, Defendant in fact has an interest in a trust that formerly held the assets of his business. He testified that his trust no longer had any assets but has not been dissolved.

53. Contrary to Defendant's answer on question 31 of the Schedule A/B, and his testimony during his Rule 2004 exam that he only had an interest in two (2) Mass Mutual Life Insurance Policies and a Symetra Life Insurance Policy, Defendant in fact has an in a Bright House Financial Insurance Policy and possibly others.

54. Although Defendant answered "no" to question 35 of his original Schedule A/B, which asked whether he had property not already listed, Defendant in fact has a number of assets, including but not limited to non-disclosed bank accounts, a security deposit, and insurance policies.

55. Although Defendant described Citicard CBNA as is business debt on his amended schedule E/F[9], the statements dated December 2016 through July 2017 the United States Trustee received from Citicard CBNA are in the Defendant's individual name, not a business name. And

---

[8] Docket No. 12, Amendment after the original 341 on June 14, 2019 wherein the Plaintiff discovered after a review of debtor's tax return and questioned debtor regarding the same.
[9] Docket No. 9, Amended Schedule E/F, page 5 of 8, no. 4.3

shows only personal expenses, such as Macy's, Teavana, Schnucks, and Tomas Flavin DDS (dentist).

56.     Although Defendant listed his household income on Schedules I as $2,709.76 in pension or retirement income, $942.76 in pension or retirement income of his non-filing spouse, and $40,000 in the form of an annual "gift" from his son, Defendant significantly understated the amount of his monthly income. Defendant routinely received funds from STL Brokerage Midwest Bank, account no. 506 and paid personal expenses such as insurance and rent from the same account.

57.     Although the Defendant's Schedule J lists a monthly rental expense of $2,583.33, this expense is in fact paid by one or both of Defendant's sons and not by Defendant or his non filing spouse.  Although Schedule J lists an entertainment expense of $1,500.00 per month as the non-filing spouse's gambling expense, he testified at his Rule 2004 exam that she likely spends a greater amount.

58.     Although Defendant did not list any income from employment or from operating a business during the previous two years in response to question 4 of the statement of financial affairs, the Defendant testified at his Rule 2004 exam that he receives money from his son(s) and that he writes and cashes checks from the undisclosed STL Brokerage Midwest Bank, account no. 506 for his personal use.

59.     Defendant's response to question 5 of his second amended[10] statement of financial affairs, which lists other income received during this year or the two previous calendar years, did not include the undisclosed income for Defendant received from STL Brokerage.

---

[10] See Docket 13 filed July 7, 2019.

10

60. Defendant's response to question 6, second amended[11] statement of financial affairs, which lists payments made before bankruptcy is false as the payment described to the Landlord, in the amount of $2,583.33 monthly for rent is actually paid by the Defendant's son(s);

61. Defendant made a false oath by not disclosing on his original and amended statement of financial affairs the payments he received from Complete Accounting Solutions and STL Brokerage Services, LLC on his original and amended statement of financial affairs. The amendment to disclose the transfers to Complete Accounting Solutions and STL Brokerage Services, LLC only came after questioning at the original 341 meeting.

62. Although the Defendant answered "no" to question 18 of his original statement of financial affairs, which asked him whether he had sold, traded, or otherwise transferred any property other than in the ordinary course of his business or financial affairs during the two years before he filed for bankruptcy it appears this is false; in fact, he transferred assets of Custom Services International to his son.

63. Defendant formerly owned and operated Custom Services International (hereinafter referred to as "CSI") for over 30 years. This company provided international custom clearance services. Defendant testified at his original 341 meeting of creditors that that his business closed in December of 2017 due to aging customers and during his during his Rule 2004 exam that the company ran out of money. Defendant testified at his Rule 2004 exam that during the same year (2017), his son, Nick Kausch opened STL Brokerage LLC. According to Defendant's testimony, STL Brokerage LLC is located at the same addresses as CSI was located and is offering the same services as Defendant's "former" business offered. Defendant is not only a signatory on the bank

---

[11] See Docket 13.

11

account(s) for STL Brokerage, he is one of the primary people to write checks from that account. STL Brokerage has the several of the same employees and vendors.

64. The Defendant answer of "no" to question 23 of statement of financial affairs, which asked whether he held or controlled property that someone else owns. This answer is false, as the Defendant testified at his Rule 2004 exam that he had signatory authority on his son's business and business accounts, which he routinely exercised control over.

65. The Defendant knowingly and fraudulently made a multiple false oaths or accounts in his bankruptcy case.

**WHEREFORE** Plaintiff, the United States Trustee, respectfully requests that the Court enter judgment:

(a) denying the Defendant' discharge pursuant to 11 U.S.C. § 727(a)(4), and

(b) granting any additional appropriate relief.


**COUNT II - DENIAL OF DISCHARGE PURSUANT TO 11 U.S.C. § 727(a)(2)**

65. Plaintiff realleges and incorporates the allegations of Paragraphs 1 through 64 as though fully set forth in this count.

66. Section 727(a)(2)(A) of the Bankruptcy Code provides that the court shall grant a Defendant a discharge unless the Defendant, with the intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under Title 11, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed or concealed, property of the Defendant, within one year before the date of the filing of the petition.

67. With the intent to hinder, delay, or defraud creditors Defendant's original statement of financial affairs[12], and his first amended statement of financial affairs[13], Question 6, did not disclose transfers until after representatives of the United States Trustee questioned the Defendant about them during the original 341 meeting. Defendant then filed a second amendment statement of financial affairs to disclose a transfer of $4,500.00 on 05/08/2019 to Complete Accounting Solutions, and a transfer of $5,000.00 to STL Brokerage Services, LLC on 05/08/2019.

68. The Defendant, with the intent to hinder, delay, or defraud a creditor or the chapter 7 trustee, transferred or concealed, or permitted to be transferred or concealed, the fact that he is signatory on his son's STL Brokerage business account(s), Midwest Bank account ending in #506. Upon information and belief, there are at least two additional accounts at BMO Harris Bank in the name of STL Brokerage or a related entity for which Defendant has signatory authority and/or access.

69. Defendant did not disclose that he had signatory authority over his son's business account until the day of his Rule 2004 exam. Plaintiff became aware of the account only after receiving information directly from the financial institution. An examination of non-disclosed STL Brokerage account at Midwest Bank account #506 revealed that since February 2018, Defendant is one of the primary people to write and sign checks from this account. From February 2018 through the petition date, Defendant routinely wrote checks to himself, totaling approximately $40,000. A significant number of checks the Defendant wrote to himself within the year of filing were cashed. Defendant testified during his Rule 2004 exam regarding the checks he cashed, "Now the ones that have my signature on it, those are mine. I cash those. I keep money in my pocket to pay things throughout the month or week, whatever." From the same account and during this same period Defendant wrote checks to his son, Nick Kausch (the purported owner of STL Brokerage Services),

---

[12] Docket No. 1.
[13] Docket No. 10.

13

totaling approximately $30,000.00 and to STL Brokerage LLC (account(s) at BMO Harris Bank) totaling approximately $577,000.00. Defendant furthered the concealment by not disclosing the transfers or the accounts on his original bankruptcy schedules or statement of financial affairs.

70. Five (5) days after the petition date, Defendant wrote a check from STL Brokerage's Midwest Bank, account no. 506 for $140,000.00 to a STL Brokerage LLC. This check was deposited into a BMO Harris Bank account to which the Defendant is believed to have access.

71. Nine (9) days after the petition date, Defendant wrote a check to himself from STL Brokerage's Midwest Bank, account no. 506, for $23,250.00. That check was deposited into Defendant's Midwest Bank account, which he listed on his Schedules A/B. Defendant testified at the end of his Rule 2004 exam that this amount was a gift from his son Nick Kausch to cover the rent. He had previously testified during his Rule 2004 exam that his son Jerold Kausch agreed to pay the rental expense.

**WHEREFORE** Plaintiff, the United States Trustee, respectfully requests that the Court enter judgment:

(a)     denying Defendant' discharge, pursuant to 11 U.S.C. § 727(a)(2), and

(b)     granting any additional appropriate relief.


### COUNT III - DENIAL OF DISCHARGE PURSUANT TO 11 U.S.C. § 727(a)(3)

72. Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 71 and incorporates them by reference here.

73. Section 727(a)(3) provides that the court shall grant a Defendant a discharge unless the Defendant has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the Defendant's

financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all the circumstances of the case.

74. Defendant is a sophisticated businessman having operated Custom Services International, providing international customs transportation services and Prairie State Terminal an intermodal transportation service for over 30 years. Defendant stated that he did not have access to credit card statements for creditors listed in the bankruptcy. The Defendant also did not produce actual statements for Custom Services International[14].

75. From the documents produced by Defendant, certain financial institutions[15] and the testimony provided pursuant to the Rule 2004 subpoena revealed that Defendant concealed several documents, including but not limited to the bank statements, canceled checks and deposit slips for the undisclosed account(s) which he had signatory authority, in the name of STL Brokerage and insurance policies. Also concealed financial information regarding the bank account(s) where the checks written by Defendant from STL Brokerage's Midwest Bank, account no. 506 were deposited and what interest Defendant had in those accounts. The Plaintiff independently discovered that Defendant's former business, Custom Services International maintains or maintained an account at BMO Private Bank within two (2) years of filing. Defendant concealed or failed to preserve statements, canceled checks and deposit slips for this account, among other things.

76. During the Defendant's Rule 2004 exam, he agreed to turn over a several items by March 16, 2020. However, he failed to turn over BMO Harris, BMO Harris Private Bank, insurance policy information and other requested information by that date. Defendant failed to provide full and accurate records and information concerning the undisclosed bank account(s), information

---

[14] Defendant produced what appeared to be a ledger and not an actual statement along with deposit tickets and check images for the requested period.
[15] Defendant consented to United States Trustee's Office's ability to request the financial information directly from certain financial institutions.

15

regarding the BMO Private Bank account and other previously requested information. Defendant has failed to preserve credit card statements for debts listed in this bankruptcy, bank statements, check images and deposit tickets for account(s) held by Custom Service International from which his financial condition or business transactions might be ascertained, without justification under all the circumstances of the case.

    **WHEREFORE** Plaintiff, the United States Trustee, respectfully requests that the Court enter judgment:

(a)     denying Defendant' discharge, pursuant to 11 U.S.C. § 727(a)(3), and

(b)     granting any additional appropriate relief.

Dated: March 30, 2020

Respectfully submitted,

DANIEL J. CASAMATTA
Acting United States Trustee

PAUL A. RANDOLPH
Assistant United States Trustee

*/s/ Sirena T. Wilson*
Sirena Wilson, Trial Attorney
MO Bar #34363 LSBA
Office of United States Trustee
111 So. 10th Street, Room 6353
St. Louis, MO 63102
(314) 539-2952 Phone
(314) 539-2990 Fax
Sirena.Wilson@usdoj.gov